Matter of Profeta v Edward J. Bosti Elementary Sch., Connetquot Cent. Sch. Dist. of Islip (2020 NY Slip Op 06420)





Matter of Profeta v Edward J. Bosti Elementary Sch., Connetquot Cent. Sch. Dist. of Islip


2020 NY Slip Op 06420


Decided on November 12, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 12, 2020

529243

[*1]In the Matter of the Claim of Carmina Profeta, Appellant,
v
Edward J. Bosti Elementary School, Connetquot Central School District of Islip, et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: October 16, 2020

Before: Lynch, J.P., Mulvey, Devine, Pritzker and Colangelo, JJ.


Pasternack Tilker Ziegler Walsh Stanton & Romano LLP, New York City (Micheal K. Gruber of counsel), for appellant.
Cherry, Edson & Kelly, LLP, Melville (David W. Faber of counsel), for Edward J. Bosti Elementary School, Connetquot Central School District of Islip and another, respondents.



Pritzker, J.
Appeal from a decision of the Workers' Compensation Board, filed October 17, 2018, which ruled, among other things, that claimant voluntarily withdrew from the labor market.
Claimant, a per diem substitute teacher, sustained injuries to her left knee, left wrist, neck and back on February 28, 2017 when she tripped and fell at the elementary school where she then was working. At the time of this incident, claimant had concurrent employers — Connetquot Central School District of Islip (hereinafter the school district), which claimant denominated as her primary employer, Central Islip School District and Realty Connect USA. Claimant continued to work without any modifications or restrictions for two weeks after the incident and first sought medical treatment for her injuries approximately five weeks after the incident. Although claimant did not return to work for any of the previously identified employers, she did accept a marketing position with a local art studio and began working there on a commission basis in July 2017. The following summer, claimant resumed working as a real estate salesperson — albeit for an entity other than Realty Connect.
In the interim, claimant filed a claim for workers' compensation benefits. Following various hearings and depositions, a Workers' Compensation Law Judge made certain awards, prompting the school district and its third-party administrator to seek review from the Workers' Compensation Board — specifically, with respect to the issue of whether claimant voluntarily withdrew from the labor market. Additional hearings ensued, a subsequent decision was rendered and the school district and its third-party administrator again sought review by the Board. Ultimately, the Board concluded that claimant voluntarily withdrew from the labor market two weeks after the injury-producing incident — noting that claimant did so without seeking treatment or advice from a medical professional. The Board further found that although claimant remained attached to the labor market, any loss of earnings was not the result of her compensable injuries. This appeal by claimant ensued.
We affirm. "Whether a retirement or withdrawal from the labor market is voluntary is a factual determination to be made by the Board, and its decision will be upheld when supported by substantial evidence" (Matter of Hunter v Town of Hempstead, 127 AD3d 1539, 1539 [2015] [internal quotation marks and citations omitted]; accord Matter of Schirizzo v Citibank NA-Banking, 128 AD3d 1293, 1293-1294 [2015]; see Matter of York-Gunning v St. John's Hosp., 81 AD3d 1042, 1043 [2011]). In order for such retirement or withdrawal from the labor market to be deemed involuntary, there must "be some evidence that the claimant's disability caused or contributed [there]to" (Matter of Lombardo v Otsego County Empls., 125 AD3d 1079, 1080 [2015] [internal quotation marks and citations omitted]; see Matter of Schirizzo v Citibank NA-Banking, 128 AD3d at 1294).
As noted previously, claimant admitted that she continued working as a substitute teacher — without restrictions or modifications — for approximately two weeks after she sustained her injuries and acknowledged that she did not seek medical treatment for such injuries until roughly five weeks after the incident. Additionally, the record reflects that claimant did not register or otherwise attempt to work as a substitute teacher for the 2017-2018 academic year. Although claimant testified that it was up to the individual school districts to invite her to register as a substitute teacher and that she did not receive any invitations to do so for the 2017-2018 academic year, the fact remains that claimant made no effort to resume work in this capacity — despite the fact that her treating physician had indicated in June 2017 that she could "begin working with younger children" subject to certain limitations.
Claimant's stated reason for not returning to substitute teaching was her concern that she could be called upon to separate unruly children. In this regard, the school district's representative acknowledged that there was a "strong probability" of that occurring at the "secondary" level, but he indicated that it was "highly unlikely" that such a situation would arise at the elementary school level and that the school district "[a]bsolutely" would accommodate a substitute teacher's request to work with younger children "where there might be less interaction physically." Similarly, although it appears that claimant could not be guaranteed a particular assignment, it also appears that claimant had some measure of choice regarding the assignments that she pursued and that such assignments would be consistent with the lifting restrictions placed upon her. Under these circumstances, and deferring to the Board's credibility determinations (see e.g. Matter of Scriven v Davis Ulmer Sprinkler Co., 183 AD3d 1098, 1100 [2020]; Matter of Hernandez v KNS Bldg. Restoration, Inc., 180 AD3d 1129, 1131 [2020]), substantial evidence supports the Board's finding that claimant voluntarily withdrew from the labor market.
With respect to claimant's asserted loss of earnings, where there has been a voluntary removal from and subsequent reattachment to the labor market, the claimant "must demonstrate that his or her earning capacity and his or her ability to find comparable employment ha[s] been adversely affected by his or her disability" (Matter of Pontillo v Consolidated Edison of N.Y., Inc., 156 AD3d 1064, 1065 [2017] [internal quotation marks, brackets and citation omitted]; accord Matter of Figueroa v Consolidated Edison Co. of N.Y., Inc., 168 AD3d 1329, 1331 [2019]). More specifically, the claimant must "demonstrate that other factors totally unrelated to his or her disability did not cause the adverse [e]ffect on his or her earning capacity" (Matter of Pontillo v Consolidated Edison of N.Y., Inc., 156 AD3d at 1065 [internal quotation marks, brackets and citation omitted]; see Matter of Marcy v City of Albany Fire Dept., 175 AD3d 765, 767 [2019]).
Although the Board erroneously stated that claimant continued to work as a real estate agent for Realty Connect following the February 2017 incident, claimant concedes in her brief that she became reattached to the labor market in July 2017 when she began working for a local art studio. The duration of claimant's employment with the art studio is unclear but, as noted previously, she resumed working as a real estate agent in or about June 2018. Regardless of the precise nature or duration of claimant's subsequent employment, the crux of the Board's finding in this regard was that — long after her treating physician indicated in June 2017 that she could begin working with younger children — claimant chose to pursue opportunities other than substitute teaching; hence, it was claimant's choice, not her compensable injuries, that resulted in claimant's loss of earnings. As we are of the view that the Board's finding is supported by substantial evidence, and as claimant otherwise failed to demonstrate that her loss of earnings was causally related to her injuries, we discern no basis upon which to disturb the Board's decision. Claimant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Lynch, J.P., Mulvey, Devine and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.