Matter of Vankoevering v New York State Canal Corp. (2022 NY Slip Op 07124)

Matter of Vankoevering v New York State Canal Corp.

2022 NY Slip Op 07124

Decided on December 15, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 15, 2022

534929
[*1]In the Matter of the Claim of Pamela Vankoevering, Respondent,
v
New York State Canal Corp. et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:November 14, 2022

Before:Garry, P.J., Clark, Aarons, Pritzker and McShan, JJ.

The Law Offices of Melissa A. Day, PLLC, Amherst (Alexis D. Hatten of counsel), for appellants.
Zea Proukou PLLC, Rochester (Randi Nicole Proukou of counsel), for Pamela Vankoevering, respondent.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for Workers' Compensation Board, respondent.

Garry, P.J.
Appeal from a decision of the Workers' Compensation Board, filed August 10, 2021, which ruled, among other things, that claimant had involuntarily retired.
Claimant, an office assistant, has an established claim for a work-related injury to her neck that was sustained in October 2018. After undergoing surgery for this injury in March 2019, claimant resumed her employment in June 2019. In March 2020, claimant's treating physician found that claimant had reached maximum medical improvement, had sustained a 25% permanent impairment of her cervical spine with a class 2, severity A ranking and was capable of medium work. The orthopedic surgeon who conducted an independent medical examination of claimant in August 2020 reached similar conclusions — agreeing that claimant had reached maximum medical improvement and assigning a class 2, severity A ranking for claimant's cervical spine. The independent medical examiner also noted that claimant was experiencing pain in the back of her neck and tingling in her right hand, characterized her prognosis as guarded and concluded that she was capable of sedentary work. In the interim, claimant retired in January 2020.
Following a hearing to address, among other things, issues of permanency and loss of wage-earning capacity, a Workers' Compensation Law Judge (hereinafter WCLJ) issued an amended decision finding, as relevant here, that claimant had sustained a permanent partial disability with a 25% loss of wage-earning capacity. As the WCLJ found "no credible evidence of a compensable retirement" and no attachment to the labor market, claimant did not receive a reduced earnings award. Upon administrative review, the Workers' Compensation Board modified the WCLJ's decision, finding that claimant's disability contributed to her decision to retire and, hence, she was entitled to a reduced earnings award. This appeal by the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) ensued.
We affirm. "Generally, a claimant who voluntarily withdraws from the labor market by retiring is not entitled to workers' compensation benefits unless the claimant's disability caused or contributed to the retirement" (Matter of Lombardi v Brooklyn Union Gas Co., 306 AD2d 704, 705 [3d Dept 2003] [citation omitted]; accord Matter of Tomaine v City of Poughkeepsie Police, 178 AD3d 1256, 1257 [3d Dept 2019]; see Matter of Farrulla v SUNY at Stony Brook, 193 AD3d 1206, 1208 [3d Dept 2021]). In this regard, "evidence that a claimant received medical advice to retire is not essential to establishing that the claimant [involuntarily withdrew] from the labor market" (Matter of Clohesy v Consolidated Edison Co. of N.Y., 306 AD2d 657, 658 [3d Dept 2003] [internal quotation marks and citation omitted], lv dismissed 100 NY2d 639 [2003]; see Matter of Evans v Jewish Home & Hosp., 289 AD2d 795, 796 [3d Dept 2001]). Rather, all that is required is that there "be some evidence that the claimant's disability [*2]caused or contributed to [the] retirement" (Matter of Clohesy v Consolidated Edison Co. of N.Y., 306 AD3d at 658 [internal quotation marks and citations omitted]; see Matter of Tomaine v City of Poughkeepsie Police, 178 AD3d at 1257; Matter of Schirizzo v Citibank NA-Banking, 128 AD3d 1293, 1294 [3d Dept 2015]; Matter of LeFever v City of Cortland Fire Dept., 66 AD3d 1061, 1062 [3d Dept 2009], lv denied 13 NY3d 716 [2010]). "Whether a retirement or withdrawal from the labor market is voluntary is a factual determination to be made by the Board, and its decision will be upheld when supported by substantial evidence" (Matter of Schirizzo v Citibank NA-Banking, 128 AD3d at 1293-1294 [internal quotation marks and citations omitted]; accord Matter of Rivera v Joseph L. Balkan, Inc., 193 AD3d 1214, 1215 [3d Dept 2021]; Matter of Profeta v Edward J. Bosti Elementary Sch., Connetquot Cent. Sch. Dist. of Islip, 188 AD3d 1366, 1367 [3d Dept 2020]). In evaluating the evidence before it, the Board, which is not bound by the WCLJ's findings or determinations (see Matter of White v SEG Maintenance, Inc., 205 AD3d 1257, 1259 [3d Dept 2022]; Matter of Nassar v Masri Furniture & Mdse., Inc., 91 AD3d 1022, 1022-1023 [3d Dept 2012]), "has broad authority to resolve factual issues based on credibility of witnesses and draw any reasonable inference from the evidence in the record" (Matter of Rivera v Joseph L. Balkan, Inc., 193 AD3d at 1215 [internal quotation marks and citation omitted]).
Claimant testified that her decision to retire was "somewhat" attributable to her permanent partial disability, explaining that her clerical duties "bothered [her] shoulder and neck from typing and using the mouse" (compare Matter of Greco-Meyer v Nassau County Police Dept., 139 AD3d 1296, 1298 [3d Dept 2016], lv denied 28 NY3d 901 [2016]; Matter of Lombardo v Otsego County Empls., 125 AD3d 1079, 1080-1081 [3d Dept 2015]). Upon further questioning, claimant reiterated that her decision to retire was motivated in part by her "physical capabilities," noting that, as a result of her neck injury, she was experiencing "some cramping and pain and numbness in [her] hand" and that she could not sit at her work computer for as long as she previously was able "without [her condition] bothering [her]." Although claimant admittedly did not receive medical advice to retire, the independent medical examiner acknowledged that claimant's subjective complaints of pain in her neck and tingling in her right hand were "proportionate to the objective findings" upon his physical examination of claimant and, as noted previously, he characterized claimant's prognosis as "guarded." Finally, claimant indicated that her decision to take a regular service retirement — as opposed to a disability retirement — was occasioned solely by the fact that the former afforded her greater benefits. The record further reflects that claimant had not achieved her maximum retirement benefit, i.e., her benefit would have increased [*3]had she continued to work as an office assistant. Under these circumstances, substantial evidence supports the Board's finding that claimant's disability contributed to her decision to retire and, therefore, her retirement was involuntary (compare Matter of Hunter v Town of Hempstead, 127 AD3d 1539, 1539-1540 [3d Dept 2015]; Matter of Gennes v Longwood Cent. School Dist., 2 AD3d 1015, 1016-1017 [3d Dept 2003]; Matter of Lombardi v Brooklyn Union Gas Co., 306 AD2d at 705; Matter of Curtis v Dale Pipery Corp., 295 AD2d 836, 837-838 [3d Dept 2002]).
To the extent that the carrier challenges claimant's reduced earnings award, where, "as here, the Board finds that a claimant classified with a permanent partial disability has involuntarily retired from his or her job due to the disability, it may also infer that the claimant's reduced future earnings resulted from the disability rather than from [an] unwillingness to work" (Matter of Delk v Orange & Rockland, 191 AD3d 1067, 1070 [3d Dept 2021] [internal quotation marks and citation omitted]; see Matter of Woodruff v Phelps Sungas, Inc., 137 AD3d 1345, 1346 [3d Dept 2016]). "Such an inference, however, is merely permissible and not an entitlement or a presumption, and the burden remains on the claimant to demonstrate that his or her reduced earnings [are] due to the disability and not unrelated factors" (Matter of Delk v Orange & Rockland, 191 AD3d at 1070 [internal quotation marks and citations omitted]).
Following her retirement, claimant worked 35 hours each week caring for her mother — performing such tasks as housekeeping (within her lifting limitations), preparing her mother's meals and medications and taking her mother to doctor's appointments — and was paid through the Center for Disability Rights for providing such services. Upon due consideration of the appropriate vocational factors (see Matter of Cameron v Crooked Lake House, 106 AD3d 1416, 1416 [3d Dept 2013], lv denied 22 NY3d 852 [2013]), the Board concluded that claimant had sustained a 25% loss of wage-earning capacity and made an appropriate award. Contrary to the carrier's assertion, the record does not support a finding that claimant's retirement was financially motivated and, therefore, "something other than the disability was the sole cause of claimant's reduced earning capacity after retirement" (Matter of Bryant v New York City Tr. Auth., 31 AD3d 936, 938 [3d Dept 2006] [internal quotation marks and citation omitted]). Accordingly, we discern no basis upon which to disturb the Board's findings in this regard. The carrier's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Clark, Aarons, Pritzker and McShan, JJ., concur.
ORDERED that the decision is affirmed, with costs to claimant.